Arthur RATZLAFF et al v. FRANZ FOODS
OF ARKANSAS

5-5600, 5-5601 & 5-5602                468 S. W. 2d 239

Opinion delivered June 21, 1971

*John O. Maberry,* and *Putman, Davis & Bassett,* for appellants.

*Crouch, Blair, Cypert & Waters,* for appellee.

Conley Byrd Justice. Appellants Mr. and Mrs. Arthur Ratzlaff, Mr. and Mrs. Harold C. Collins and Mr. and Mrs. S. D. Molter brought separate actions against appellee Franz Foods of Arkansas, a subsidiary of Tyson's Foods, an Arkansas Corporation, to recover damages for certain noxious wastes discharged into the sewer system of the city of Green Forest, Arkansas, that allegedly polluted Dry Creek, a stream running through appellants' properties. The trial court sustained a demurrer and dismissed each of the complaints. The three causes have been consolidated in this court because of the identity of the issues.

The complaints set forth that appellants are dairy farmers owning lands through which Dry Creek runs and then allege:

"(5)   That the defendant, in its business as a chicken processing and fertilizer plant, utilizes the sewers of the City of Green Forest, Arkansas, under a contract which requires and makes it the duty of the defendant to remove and eliminate from its deposits into the sewer system, some or all of the following: Refuse, offal of fowls, blood, wastes and other unwholesome, offensive and noxious waste products; that one purpose of this contract was to prevent the sewage facilities of the City from being oversaturated and to prevent harm to landowners located down-stream from the City sewage facilities and that the defendant at all times herein knew of the purpose of this contract.

"(6)  Defendant is guilty of the following acts of negligence which were a proximate cause of plaintiffs' injuries and damages as hereinafter alleged:

(a)   That the defendant, in violation of its contractual duty with the City of Green Forest, carelessly and negligently deposited great quantities of offensive waste products into the sewers of the City of Green Forest and thereby polluted and made foul Dry Creek to plaintiffs' damage.

(b)   That defendant failed to comply with its contract with Green Forest by allowing waste, blood, refuse and other unwholesome products to get into the sewer system when it knew or by exercising ordinary care should have known that the types and quantities of waste being deposited into the sewer system were in violation of its contract with the City and would result in pollution of Dry Creek to the injury of plaintiffs.

(c)   That defendant negligently washed down its processing facilities so as to cause the pollution originally contracted against to occur; that defendant knew or should have known that it was violating its duty under its contract so as to injure plaintiffs and was in a position to prevent a recurrence of

such injury and failed to prevent such recurrence to the damage of plaintiffs."

In determining whether or not the complaints state a cause of action we find that we must consider and analyze three established principles of law. The first proposition is the general rule that one who creates a nuisance such as pollution of a stream is liable to lower riparian owners for the direct and probable consequence of the nuisance. See *Smith* v. *Magnet Cove Barium Corp.,* 212 Ark. 491, 206 S. W. 2d 442 (1947) and *Spartan Drilling Co.* v. *Bull,* 221 Ark. 168, 252 S. W. 2d 408 (1952). The second proposition is that a user of a city sewer is clothed with immunity from liability once he lawfully deposits his sewage in the sewage system. The theory upon which immunity from liability is granted to the user is that once the sewage is deposited in the city's conduit, the user no longer has control of the disposal of the sewage because by law the city is given the exclusive right to control and dispose of sewage. See *Carmichael* v. *City of Texarkana,* 116 F. 845, 54 C. C. A. 179 (1902). It was upon this theory, apparently, that the trial court dismissed appellants' complaints.

The third principle of law is that a party who owes no obligation to third persons or the public in general may by contract assume an obligation to use due care towards such third persons or the public in general. See *Hogan* v. *Hill,* 229 Ark. 758, 318 S. W. 2d 580 (1958) and *Collison* v. *Curtner,* 141 Ark. 122, 216 S. W. 1059 (1919). When this principle is read in connection with the complaint allegations that the appellee violated its contract with the city to remove certain refuse to prevent oversaturation of the city's sewage disposal facilities, we find that the trial court erred in sustaining the demurrers and dismissing the complaints. This is supported both by logic and authority. The very essence of the immunity from liability, stated in the second principle above, is that the user of the city's conduit loses control of sewage once it is deposited and that exclusive control thereafter is in the city. However here the allegation is that the user who contracted not to oversaturate the city's treatment facilities violated such contract and thereby caused a pollution of the appellants' lands. Un-

der such allegations it does not logically follow that a user in violation of his contract can wrest the control of the city's sewage facilities from the city and at the same time stand behind the immunity which the law accords in the second principle stated above. Furthermore, in *Carmichael* v. *City of Texarkana, supra,* it was recognized that a user under some circumstances could be liable. It was there stated:

"This conclusion has not been reached without a careful consideration of the broad averments in the bill that the demurrants and the city, acting together in concert at the same time, have, by means of the open sewer and its use, created and maintained this nuisance, and that they have not ceased to do so. If these allegations stood alone, they would undoubtedly charge these citizens with liability; but they are accompanied with averments that the demurrants invoked the power of the city to construct the sewer, that the city was guilty of gross negligence in building it, and that the demurrants had used, occupied, and operated it 'by authority of, under, and from the city.' When all these statements are read together with the statutes which vest the right to construct, to change, to repair, and to control this sewer exclusively in the city, there is no escape from the conclusion that the acts and omissions of the city, and not those of the citizens, constituted the proximate cause of the injury to the complainants, and that the inhabitants who requested the construction and operation of the improvement are not liable for those acts and omissions, because they had no power to command or control the city in their performance."

Reversed and remanded.